**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| In Re: | Chapter 7 |
| **CHRISTOPHER S. PADUCH,** | Case No. 12-32101 (AMN) |
| Debtor. | |

**UNITED STATES TRUSTEE'S STATEMENT CONCERNING DEBTOR'S MOTIONS TO REOPEN CASE, AMEND SCHEDULES, AND TO AVOID JUDICIAL LIENS PURSUANT TO SECTION 522(f)**

William K. Harrington, United States Trustee for Region 2 ("United States Trustee"), in furtherance of his duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (5), respectfully files this Statement concerning Christopher S. Paduch's (the "Debtor") Motion to Reopen Case, Amend Schedules, etc. and Motion to Avoid Judicial Liens Pursuant to Section 522(f). ECF 19 and 20 respectively. In support of his Statement, the United States Trustee, through his undersigned counsel, states as follows:

1. On September 19, 2012, the Debtor filed his voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. ECF 1. Debtor was at that time and is still represented by Attorney Charles A. Eggert, Jr. ("Attorney Eggert"). *Id.* Chapter 7 panel trustee Kara S. Rescia, Esq. ("Trustee Rescia") was appointed as interim and permanent Chapter 7 trustee of the Debtor's bankruptcy estate. Case Docket.

2. The Debtor's Section 341(a) meeting of creditors was scheduled for, conducted, and closed on October 26, 2012 by Trustee Rescia. ECF 5 and Docket Entry for October 29, 2012.

3. On October 29, 2012, Trustee Rescia filed a "No Distribution Report" ("NDR")

on the Debtor's case docket.

4. On January 5, 2013, the Debtor received his bankruptcy discharge. ECF 17.

5. On January 23, 2013, the Bankruptcy Court Clerk closed the Debtor's bankruptcy case without further activity by the Debtor or other party in interest. Case Docket.

6. On October 14, 2021, Attorney Eggert, on behalf of the Debtor, filed the instant Motion seeking the relief of the Bankruptcy Court to reopen Debtor's Chapter 7 case, allow the Debtor to amend certain schedules, particularly Debtor's Schedule C, and filed a Motion to Avoid Judicial Liens Pursuant to 11 U.S.C. § 522(f) ("Motion to Avoid Liens"). ECF 19 and 20, respectively.

## Reopening Debtor's Closed Chapter 7 Case

7. "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). "[T]he decision whether to reopen a case rests within the sound discretion of the bankruptcy court." *Matter of Caicedo*, 159 B.R. 104, 105 (Bankr. D.Conn. 1993). "[T]he Bankruptcy Code does not provide a definition of 'cause,'[but] courts have held that cause to reopen a bankruptcy case includes the need to amend schedules to add assets or creditors, or to commence lien avoidance actions." *In re Stein*, 394 B.R. 13, 15 (Bankr. E.D.N.Y. 2008). "In deciding whether to reopen a case under § 350(b), courts 'may consider equitable concerns, and ought to emphasize substance over technical considerations.'" *Id.* (*quoting In re Emmerling*, 223 R.R. 860, 864 (2d Cir. BAP 1997). "Courts will also consider 'the benefit to the debtor, the prejudice to the affected entity . . . [and] the benefit to the creditors.'" *Id.* (*quoting In re Koch*, 229 B.R. 78, 85-86 (Bankr. E.D.N.Y. 1999). "Reopening a case does not automatically grant the Debtor a right to amend schedules or take other actions that ought to have occurred prior to closing; instead, the reopening of the case

2

allows administrative and ministerial loose ends to be tied." *In re Wilmoth,* 412 B.R. 791, 795 (Bankr. E.D.Va. 2009) (citations omitted).

### Timeliness of Debtor's Motion to Reopen

8.  Debtor filed his Motion to Reopen his Chapter 7 case approximately eight years and nine months after the closing of his case. Neither Section 350(b) nor Fed. R. Bankr. P 5010, which governs the procedures for reopening a closed case, prescribe a time period within which a Motion to Reopen must be filed. The legislative history of Section 350(b) states that the equitable doctrine of laches may bar a party's attempt to reopen a case:

> § 350.  Closing and reopening cases
>
> . . . Subsection (b) permits reopening of the case to administer assets, to accord relief to the debtor, or for other cause. Though the court may permit reopening of a case [to] exercise an avoiding power, laches may constitute a bar to an action that has been delayed too long.

H.R.Rep. No.595, 95th Cong., 1st Sess. 338 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787,5835,5963, 6294.

9.  "When considering whether the laches defense should be sustained, a court should balance [the] delay against the prejudice suffered . . . by virtue of the delay. This balancing requires an examination of the equitable circumstances peculiar to each case." *Matter of Caicedo*, 159 B.R. 104, 106 (Bankr. D.Conn. 1993) (citations omitted). *See also Robins Island Pres. Fund, Inc. v. Southold Dev. Corp.*, 959 F.2d 409, 423 (2d Cir. 1992) ("Generally, laches is applied where it is clear that a plaintiff unreasonably delayed in initiating an action and a defendant was prejudiced by the delay.") and *In re Emmerling,* 223 B.R. 860, 864 (2d Cir. BAP 1997) (A Court of equity must consider whether reopening a case would prejudice the adversary's position.)

10.  In the *Caicedo* case, Judge Krechevsky commented upon what was required for

laches to apply to the reopening of a closed bankruptcy case and motion to avoid judicial liens.

> "Laches is not imposed as a bar to suit simply because a plaintiff's delay is found unexcused; it must also be determined whether the defendants have been prejudiced as a result of that delay. Defendants must have suffered some amount of prejudice to successfully invoke laches even if plaintiffs have a weak or no excuse for their delay. The mere passage of time is insufficient, standing alone, to establish laches. The [judicial lien-holder] must show that the [debtor's] delay in asserting a right was inexcusable and that the [judicial lien-holder] was thereby prejudiced."

*Matter of Caicedo*, 159 B.R. at 107 (citations omitted).

11. The Debtor's Motion is bereft of a description of the equitable circumstances underlying why the anticipated lien avoidance was not done while the Debtor' Chapter 7 case was open in 2012 – 2013 or why it has taken more than eight years for the Debtor to come before the Court to obtain relief.

12. Evidence supporting prejudice is usually brought by those lien-holders against whom a motion to avoid lien is brought. Debtor's Motion to Avoid Liens does not address the issue of prejudice against the lien holder(s), and the United States Trustee is as yet unaware of whether such prejudice exists concerning Debtor's request(s) for relief.

### **Debtor's Ability to Amend Schedules Post-Closing**

13. The Debtor's Motion states that it is his intention, should his Chapter 7 case be reopened by the Court, to amend Schedules C and D. ECF 19, ¶ 7.

14. The Debtor has lost the ability to amend his bankruptcy schedules *as a matter of right* upon the closing of his Chapter 7 case on January 23, 2013. "A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time *before the case is closed*." Fed. R. Bankr. P 1009(a) (Emphasis added).

15. Once a bankruptcy case has been closed and then reopened, should a debtor seek relief to amend his schedules, he must do so in accord with Fed. R. Bankr. P. 9006(b)'s

4

"Enlargement" of time provisions which requires that a debtor must make a showing of *excusable neglect* in order to obtain relief and the Court's allowance to amend his bankruptcy schedules. *See* Fed. R. Bankr. P.9006(b). *See also Pioneer Investment Services v. Brunswick Associates*, 507 U.S. 380, 388-390, 113 S.Ct. 1489, 1495-1495 (1993). The United States Trustee does not believe that the Debtor has made a sufficient (or any) showing of excusable neglect in his Motion.

### Debtor's Entitlement to Lien Avoidance

16. "The debtor bears the burden of proof by a preponderance of the evidence on every element of Section 522(f)" to establish his right to lien avoidance relief. *In re Fox*, 353 B.R. 388, 393 (Bankr. D.Conn. 2006).

17. Should the Court allow the Debtor's closed bankruptcy case to be reopened, and should the Court find cause for allowing the Debtor to amend his Schedule C to reflect more than the $0 exemption claimed by the Debtor on 5 Schulman Veselak Road, East Haddam, CT ("Residence") pursuant to 11 U.S.C. § 522(d)(1), the Debtor may only seek to avoid that portion of any non-consensual lien that actually impairs the exemption to which he was entitled to claim on the date of the filing of his bankruptcy case – September 17, 2012. "Section 522(f)(1) permits a debtor to avoid the fixing of a lien on an interest of the debtor in property *to the extent that such lien impairs an exemption of the debtor*." *In re Silveira*, 141 Fed.3d 34, 36 (1st Cir. 1998) (emphasis in original) (citation omitted) (internal quotations omitted).

18. Debtor's Motion to Avoid Liens states that the fair market value of his Residence on his petition date of September 17, 2012 was $ 235,000.00. ECF 20, page 3, ¶ 7. Debtor also states that the outstanding mortgage balance due on that date was $ 284,195.90. Id. at ¶¶ 6 and 7. On Debtor's Schedule C, he claimed an exemption of $0 on the residence (having no equity upon

which the exemption might "attach." ECF 1, Schedule C.

19. Debtor's "calculation" of his "equity" in the Residence contained in Debtor's Motion to Avoid Liens is mistaken. Debtor's calculation of the [Residence market value minus consensual mortgage lien(s) = Debtor's "equity"] as presented in ECF 20, page 2-3, ¶ 7 is not the $1 claimed by the Debtor but is instead (negative) $49,195.90 [$235,000 – $284,195.90 = $(49,195.90)] instead leaving the Debtor with no beneficial interest or equity in the Residence upon which any claimed exemption might attach.

20. "No property can be exempted unless it first falls *within* the bankruptcy estate." *Owen v. Owen*, 500 U.S. 305, 308 (1991). Since the Debtor here had no positive equity interest in the Residence on September 17, 2012, the entire equitable interest in the Residence remained with the mortgage-holder and the Debtor held only "bare legal title" to the Residence as of the petition date. "[I]f a debtor holds only bare legal title to his house – if, for example, the house is subject to a purchase-money mortgage for its full value-then only that legal interest passes to the estate; the equitable interest remains with the mortgage holder." *Id*.

21. "[S]ince the equitable interest does not pass to the estate, neither can it pass to the debtor as an exempt interest in property. Legal title will pass and can be the subject of an exemption; but the property will remain subject to the lien interest of the mortgage holder. Only where the Code empowers the Court to avoid liens or transfers can an interest originally not within the estate be passed to the estate, and subsequently (through the claim of an exemption) to the debtor." *Owen v. Owen*, 500 U.S. at 308-309.

## Conclusion

22. The reopening of Debtor's closed Chapter 7 case is a ministerial act which must first be accomplished, even conditionally or temporarily, in order for the Court to address other

matters brought on by the Debtor. If the Debtor's bankruptcy case is reopened, the Bankruptcy Court must determine whether or not to direct the United States Trustee to appoint a successor Chapter 7 bankruptcy trustee to continue the administration of the Debtor's bankruptcy case.

23. Once the Debtor's bankruptcy case is reopened and before any amended schedule can take effect, the Debtor must establish his ability to amend such schedule pursuant to Fed. R. Bankr. P. 9006(b) and establish that his failure to amend such schedules while his bankruptcy case was being administered in 2012 – 2013 was the result of "excusable neglect."

24. If excusable neglect is found by the Court sufficient to allow the Debtor to amend his bankruptcy schedules including his Schedule C exemptions where the Debtor has thus far claimed a $0 exemption in his Residence, any party in interest will have the opportunity to object to the Debtor's amended exemption(s) and/or inquire into any amended information contained in the Debtor's schedules.

25. If within the time period the Court allows for the filing of objections to amended exemptions (usually 30 days) expires without objection, those amended exemptions take effect. If an objection to amended exemptions is filed, a contested matter is thus created and will be resolved by the Bankruptcy Court in due course.

Dated: October 27, 2021  
       New Haven, CT

Respectfully submitted,  
WILLIAM K. HARRINGTON  
United States Trustee for Region 2

By:   /s/ Steven E. Mackey  
      Steven E. Mackey/ct09932  
      USDOJ Trial Attorney  
      Office of the United States Trustee  
      Giaimo Federal Bldg., Rm. 302  
      150 Court Street  
      New Haven, CT  06510  
      (203) 773-2210