UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| In The Matter of | ) CASE NO.: 12-32101 |
| CHRISTOPHER S. PADUCH, | ) CHAPTER 7 |
| Debtor | ) |
| ———————————————— | |
| CHRISTOPHER S. PADUCH AND | ) |
| JILL PETERSON, ADMINISTRATRIX | |
| OF THE ESTATE OF CHRISTOPHER S. | ) |
| PADUCH, DEBTOR | |
| Movants | ) |
| vs. | ) |
| DISCOVER BANK, | ) APRIL 27, 2022 |
| CITIBANK (SOUTH DAKOTA), N.A., | |
| KARA S. RESCIA, TRUSTEE, AND | ) |
| U.S. TRUSTEE | |
| Respondents | ) |

SECOND AMENDED MOTION TO AVOID JUDICIAL LIENS
PURSUANT TO 11 U.S.C. § 522(f)

Now Comes Christopher S. Paduch (hereinafter "Debtor") and Jill Peterson,

Administratrix of the estate of Christopher S. Paduch, Debtor (hereinafter

Administratrix") in the above-captioned matter, and the Movants herein, and move this

Court for an Order to avoid judicial liens presently held by Discover Bank and Citibank

(South Dakota), N.A. (hereinafter, Respondents"), pursuant to 11 U.S.C. § 522(f). In

support of his motion, the Debtor and the Administratrix allege as follows:

1.  This case was commenced on September 17, 2012 with the filing of Voluntary

    Petition for Relief under Chapter 7 of the United States Code.

2.  This motion is brought pursuant to 11 U. S.C. § 522(f) and Bankruptcy Rule 4003(d) to avoid the judicial liens held by the Respondents Discover Bank and Citibank (South Dakota), N.A.

3.  Said liens impair the exemption that the Debtor has claimed and/or is entitled to claim pursuant to 11 U.S.C. § 522(d)(1).

4.  The Movant, at the time of the filing, was a fee simple owner of the residential property (hereinafter, "Premises") located at 5 Schulman Veselak Road, East Haddam, Connecticut 06423.

5.  The fair market value of the Premises on the date of the filing of his Petition was $290,000.00.  See Comparative Market Analysis attached hereto as Exhibit A.

6.  On the date of the filing of said Petition there was a mortgage on the Premises as follows:

    A.  Mortgage Electronic Registration Systems, Inc., as nominee for Taylor, Bean & Whitaker Mortgage Corp., its successors, and assigns held a mortgage on the Premises signed by the Debtor in the original amount of $256,000.00 and recorded on April 18, 2005 and recorded in Volume 694 at Page 110 of the East Haddam Land Records (See Exhibit B attached hereto).  Said mortgage was assigned to Wells Fargo Bank, N.A. and recorded in Volume 893 at Page 143 of the Town of East Haddam Land Records (See Exhibit C attached hereto). The balance on said mortgage at the time of the filing of the Petition was $ 284,195.90 (See Exhibit D attached hereto).

2

7. The Debtor is entitled to an exemption of $20,669.79 with respect to the Premises at the time said Petition was filed. The Debtor has amended his schedules to claim said exemption (See Exhibit E attached hereto).

8. On May 17, 2010 (pre-petition), Discover Bank, through its counsel, filed a Judgment Lien in the amount of $14,793.52 against the Movant's interest in the subject Premises and recorded in the Land Records of the Town of East Haddam in Volume 861 at Page 64. A copy of said recorded Judgment Lien is attached hereto as Exhibit F.

9. On July 28, 2011 (pre-petition), Citibank (South Dakota), N.A., through its counsel, filed a Certificate of Judgment Lien in the amount of $14,455.37 against the Movant's interest in the subject Premises and recorded in the Land Records of the Town of East Haddam in Volume 892 at Page 134. A copy of said recorded Certificate of Judgment Lien is attached hereto as Exhibit G.

10. Said judgment liens are judicial liens pursuant to 11 U.S.C. § 101(36).

11. Said judgment liens were on said Premises as of the date of the filing of Movant's Petition and remain thereon to the present, although at the time of the filing, Movant only had information showing the claimed debt was unsecured and, accordingly, listed it on Schedule F.

12. Said judgment liens remained on the Premises on the date of filing of the Bankruptcy Petition and they continue to remain on the Premises.

| | | |
|---|---|---|
| Fair Market Value: | | $ 290,000.00 |

|  |  |  |
|---|---|---|
| Outstanding Mortgage | $ 284,195.90 | |
| JL Discover Bank | 14,793.52 | |
| JL Citibank | 14,455.37 | |

| | |
|---|---|
| Less Total Encumbrances: | $ <u>313,444.79</u> |
| Impairment Debtor's Exemption: | $( 23,444.79) |
| Debtor Movant's Exemption | $ 20,669.79 |

13. Since the Movant has exempted the claimed equity of $20,669.79 in the Premises, the judgment liens of Respondents Discover Bank and Citibank (South Dakota), N.A. totaling $29,248.89 impair the Movant's claimed equity exemption in the Premises.

14. The Movant received a Discharge of Debtor Order dated January 8, 2013.

15. The undersigned is not aware of any claim of defense by the aforesaid Respondents.

16. The Movant herein seeks to avoid the aforesaid judgment liens, being a judicial lien pursuant to 11 U.S.C. Section 522 (f).

17. The Respondents would not be prejudiced by the granting of the Movant's Motion to avoid its judgment lien, since this was a "no asset" case.

**WHEREFORE,** the Movant prays:

1. That the Court avoid, set aside, and vacate the judicial liens held by Respondents, Discover Bank and Citibank (South Dakota), N.A. pursuant to 11 U.S.C. § 522(f): being the judgment liens referred herein.

2. That the Debtor/Movant have such other and further relief as is just.

4

Dated at New Haven, Connecticut this 27th day of April, 2022.

> THE MOVANT,
> CHRISTOPHER S. PADUCH
>
> BY: /s/Charles A. Eggert, Jr.
> Charles A. Eggert, Jr., Esq;
> Charles A. Eggert, Jr., Esq., LLC
> Nine Trumbull Street
> New Haven, CT 06511
> Tel. No.: (203)772-1044
> Fax:      (203)865-0869
> Email: caelaw@optonline.net
> Fed. Bar No.: ct00754

EXHIBIT A





# Comparative
# Market
# Analysis

**Prepared for**

## Christopher and Cynthia Paduch

**For property at**

## 5 SCHULMAN VESLAK RD



**Linda Tabone**
**Keller Williams Realty**
132 Monroe Turnpike
Trumbull, CT 06611
Phone: 203-459-4663
Cell: 203-915-6096
Fax: 203-459-3433
Email: ltabone@kw.com
LindaTabone.ctmls.mlxchange.com





September 26, 2012


Christopher and Cynthia Paduch
5 Schulman Veslak Rd.
East Haddam, Ct 06423


Dear Christopher and Cynthia,

I appreciate the opportunity to provide you with a Comparative Market Analysis for your property. Prepared exclusively for you, this analysis contains a summary of the recent real estate transactions in your area for properties that are similar to yours. While none of the properties included in this analysis is exactly like yours, they do provide a good basis by which to compare your property with the 'competition'.

The following pages contain descriptions of each property whether it is currently available for sale, recently sold, or was listed but did not sell. A short description of each property is provided, followed by a summary table of each property's key features, which allows you to easily compare the features of your property with others in your area.

Your property may have special features or improvements that could substantially affect the price range in which it should be listed. We will discuss pricing in more detail after you have had a chance to review the enclosed information.

Please give me a call if you have any questions or would like any additional information. I look forward to working with you and selling your property quickly.


Sincerely,


**Linda Tabone**
**Keller Williams Realty**
132 MONROE TURNPIKE
TRUMBULL, CT 06611
Cell: 203-915-6096
Fax: 203-459-3433
ltabone@kw.com
Web Site: LindaTabone.ctmls.mlxchange.com

# *The Subject Property*

No Photo Available

## *5 SCHULMAN VESLAK RD*
## *36*

Year Built:

Square Footage:

Bedrooms:     3

Total Baths:     2.1

Lot Size:                              Est. Acres: 1.11

Attic:

Basement:     Full Basement With Walk-Out

Pool:



**Prepared for Christopher and Cynthia Paduch**

To assure you that your property is marketed to its fullest potential and to obtain the highest possible market value, I have a detailed and effective marketing strategy.

- Carefully evaluate your home and its competition and current market conditions
- Prepare a Comparative Market Analysis to establish fair market value
- Prepare listing contract
- Prepare seller disclosure statement
- Enter listing in the MLS system
- Take photos of property
- Place For Sale Sign on property
- Place lock box on property, if needed
- Inform each agent in my brokerage of this new listing
- Schedule property for Office and MLS tours
- Prepare and submit advertisement to newspaper
- Make listing available to internet web sites
- Hold open houses
- Arrange showings for other agents
- Pre-qualify potential buyers
- Review list price based on agent feedback and market condition
- Provide a weekly market activity report
- Present and review all offers with you
- Negotiate the transaction on your behalf
- Finalize the closing
- Provide references for qualified moving and relocation services

**Linda Tabone, Keller Williams Realty**
132 MONROE TURNPIKE, TRUMBULL, CT 06611
Office: 203-459-4663 | Cell: 203-915-6096 | Fax: 203-459-3433

## Comparative Market Summary - All Listings

| ML# | Bed | Baths | SqFt | Acres | Year Built | Style | List Price | Sale Price |
|---|---|---|---|---|---|---|---|---|
| M9135342 | 3 | 2.10 | 2,082 | 1.04 | 2001 | Colonial | $289,000 | |
| 17 WOODMONT CIR / E HADDAM | | | | | | Asmt: | 233320.00 | ACT |
| LP$/SqFt: $138.81 | | | SP$/SqFt: | | | LP/AVal: 1.24 | | SP/AVal: |
| M9136870 | 4 | 2.10 | 1,986 | 1.85 | 1976 | Colonial | $289,900 | |
| 23 OLD KENTWOOD RD / E HADDAM | | | | | | Asmt: | 215820.00 | NEW |
| LP$/SqFt: $145.97 | | | SP$/SqFt: | | | LP/AVal: 1.34 | | SP/AVal: |
| G626971 | 3 | 2.50 | 2,114 | 1.63 | 2001 | Colonial | $299,900 | |
| 25 HERITAGE BROOK DR / E HADDAM | | | | | | Asmt: | 228270.00 | ACT |
| LP$/SqFt: $141.86 | | | SP$/SqFt: | | | LP/AVal: 1.31 | | SP/AVal: |
| M9136001 | 3 | 2.10 | 2,160 | 1.23 | 1976 | Colonial | $325,900 | |
| 7 DEER RUN / E HADDAM | | | | | | Asmt: | 237870.00 | SHOW |
| LP$/SqFt: $150.88 | | | SP$/SqFt: | | | LP/AVal: 1.37 | | SP/AVal: |
| M9133520 | 3 | 2.10 | 2,082 | 1.36 | 2001 | Colonial | $326,900 | |
| 19 WOODMONT CIR / E HADDAM | | | | | | Asmt: | 249430.00 | ACT |
| LP$/SqFt: $157.01 | | | SP$/SqFt: | | | LP/AVal: 1.31 | | SP/AVal: |
| N329799 | 3 | 2.10 | 1,976 | 1.02 | 2001 | Colonial | $269,900 | |
| 66 FALLS BASHAN RD / MOODUS | | | | | | Asmt: | 217790.00 | ACT |
| LP$/SqFt: $136.59 | | | SP$/SqFt: | | | LP/AVal: 1.24 | | SP/AVal: |
| M9131771 | 4 | 2.50 | 2,238 | 1.29 | 1989 | Colonial | $299,999 | $ 290,000 |
| 40 STOCKING LOT RD / E HADDAM | | | | | | Asmt: | 220420.00 | CLOSE |
| LP$/SqFt: $134.05 | | | SP$/SqFt: $129.58 | | | LP/AVal: 1.36 | | SP/AVal: 1.32 |

**Total Listings:** 0

| | SqFt | List Price | Sale Price | DOM | LP/SqFt | SP/SqFt | LP/AVal | SP/AVal |
|---|---|---|---|---|---|---|---|---|
| **Average:** | 2,091 | $ 300,214 | $ 290,000 | 85 | $143.60 | $129.58 | 1.31 | 1.32 |
| **Minimum:** | 1,976 | $ 269,900 | $ 290,000 | 85 | $134.05 | $129.58 | 1.24 | 1.32 |
| **Maximum:** | 2,238 | $ 326,900 | $ 290,000 | 85 | $157.01 | $129.58 | 1.37 | 1.32 |

| Median: | 2,082 | $ 299,900 | $ 290,000 | 85 | $141.86 | $129.58 | 1.31 | 1.32 |

*(C)  2012   MLS INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED*      09/26/12    3:18 PM

## Comparative Homes - All Listings

 

|  | **5 SCHULMAN VESLAK RD** | **17 WOODMONT CIR** | **23 OLD KENTWOOD** |
|---|---|---|---|
| **REF #** |  | M9135342 | M9136870 |
| **Status** |  | Active | New |
| **Town** |  | E HADDAM | E HADDAM |
| **Style** | Colonial | Colonial | Colonial |
| **SqFt** |  | 2,082 | 1,986 |
| **YrBlt** |  | 2001 | 1976 |
| **Taxes** | $ 4,512 | $ 5,021 | $ 4,644 |
| **Assmt** | $214,850 | $233,320 | $215,820 |
| **#Rms** | 7 | 8 | 8 |
| **#Bdrms** | 3 | 3 | 4 |
| **#Baths** | 2.10 | 2.10 | 2.10 |
| **#FP** |  | 1 | 1 |
| **Attic** |  | Walkup | Pulldown Stairs |
| **Bsmt** | Full Basement With Walk-Out | Full Basement With Hatchway, | Full Basement With Ha |
| **Gar** |  | 2 / Attached | 2 / Attached |
| **Deck** |  | Ground Level | Ground Level |
| **Driveway** |  | Paved | Paved |
| **Extr Siding** | Vinyl Siding | Vinyl Siding | Clapboard |
| **Appliances Included** |  | Dishwasher, Dryer, Hood, Microwave | Oven/Range, Hood, Dishwasher, Refrigera |
| **Acres** | 1.110 | 1.040 | 1.850 |
| **Lt Desc** |  | Cul-De-Sac, Level Topography | Level Topography, Nei |
| **Wtrfrt** |  |  |  |
| **Pool** |  | N | N |
| **Exterior Features** |  | Garden Area, Underground Utilities | Garden Area, Stone W |
| **Heat Source** | Warm Air | Baseboard | Baseboard |
| **Fuel Type** |  | Oil | Oil |
| **Cooling** |  | None | Individual Unit(S) |
| **Wtr Source** |  | Private Well | Private Well |
| **Sewage** |  | Septic | Septic |
| **LD** |  | 06/22/12 | 09/15/12 |
| **DOM** |  | 87 | 2 |
| **CD** |  |  |  |
| **CL Date** |  |  |  |
| **LP** |  | $ 289,000 | $ 289,900 |
| **SP** |  |  |  |
| **LP/SqFt** |  | $138.81 | $145.97 |

**SP/SqFt**
**LP/Asmt**                                    1.24                        1.34
**SP/Asmt**
**SP/LP Ratio**


*(C)   2012    MLS INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED*              09/26/12

## Comparative Homes - All Listings

  

| | **25 HERITAGE BROOK DR** | **40 STOCKING LOT RD** | **7 DEER RUN** |
|---|---|---|---|
| REF # | G626971 | M9131771 | M9136001 |
| Status | Active | Closed/Sold | Under Deposit/Continu |
| Town | E HADDAM | E HADDAM | E HADDAM |
| Style | Colonial | Colonial | Colonial |
| SqFt | 2,114 | 2,238 | 2,160 |
| YrBlt | 2001 | 1989 | 1976 |
| Taxes | $ 4,816 | $ 4,651 | $ 5,019 |
| Assmt | $228,270 | $220,420 | $237,870 |
| #Rms | 6 | 8 | 7 |
| #Bdrms | 3 | 4 | 3 |
| #Baths | 2.50 | 2.50 | 2.10 |
| #FP | 1 | 2 | 2 |
| Attic | Storage Space | Hatch Opening | Walkup, Finished |
| Bsmt | Full Basement, Unfinished | Full Basement With Hatchway, | Full Basement With Ha |
| Gar | 2 / Attached | 2 / Attached | 3 / Detached |
| Deck | Ground Level | | Ground Level |
| Driveway | Paved, Shared | Asphalt, Paved | Gravel |
| Extr Siding | Vinyl Siding | Vinyl Siding | Wood |
| Appliances Included | Dishwasher, Oven/Range, Refrigerator, Microwave | Dishwasher, Microwave, Oven/Range, Refrigerator | Compactor, Dishwashe Microwave |
| Acres | 1.630 | 1.290 | 1.230 |
| Lt Desc | Professionally Landscaped, Ligh | Level Topography, Sloping | Level Topography, Lig |
| Wtrfrt | | N | N |
| Pool | N | N | Y / In Ground - Heate( |
| Exterior Features | | Outbuilding, Underground Utilities | Outbuilding, Garden A |
| Heat Source | Warm Air | Warm Air | Warm Air |
| Fuel Type | Oil | Oil | Oil |
| Cooling | Individual Unit(S) | Central Air | Central Air |
| Wtr Source | Private Well | Private Well | Private Well |
| Sewage | Septic | Septic | Septic |
| LD | 07/09/12 | 12/04/11 | 07/27/12 |
| DOM | 70 | 85 | 39 |
| CD | | 02/26/12 | |
| CL Date | | 04/18/12 | |
| LP | $ 299,900 | $ 299,999 | $ 325,900 |
| SP | | $ 290,000 | |
| LP/SqFt | $141.86 | $134.05 | $150.88 |

| | | | |
|---|---|---|---|
| **SP/SqFt** | | 129.58 | |
| **LP/Asmt** | 1.31 | 1.36 | 1.37 |
| **SP/Asmt** | | 1.32 | |
| **SP/LP Ratio** | | 0.97% | |

*(C)   2012   MLS INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED*          09/26/12

## Comparative Homes - All Listings

 

| | **19 WOODMONT CIR** | **66 FALLS BASHAN RD** |
|---|---|---|
| REF # | M9133520 | N329799 |
| Status | Active | Active |
| Town | E HADDAM | MOODUS |
| Style | Colonial | Colonial |
| SqFt | 2,082 | 1,976 |
| YrBlt | 2001 | 2001 |
| Taxes | $ 5,263 | $ 4,687 |
| Assmt | $249,430 | $217,790 |
| #Rms | 9 | 7 |
| #Bdrms | 3 | 3 |
| #Baths | 2.10 | 2.10 |
| #FP | 1 | 1 |
| Attic | Walkup | Hatch Opening |
| Bsmt | Full Basement With Hatchway, | Full Basement, Unfinished |
| Gar | 2 / Attached | 2 / Attached |
| Deck | Ground Level | Ground Level |
| Driveway | Asphalt | Asphalt, Paved |
| Extr Siding | Vinyl Siding | Clapboard |
| Appliances Included | | Dishwasher, Dryer, Oven/Range, Refrigerator |
| Acres | 1.360 | 1.020 |
| Lt Desc | Level Topography, Professional | Level Topography, Professional |
| Wtrfrt | | Y / Assoc Mandatory |
| Pool | N | N |
| Exterior Features | Underground Utilities | Outbuilding, Underground Utilities |
| Heat Source | Baseboard | Baseboard |
| Fuel Type | Oil | Oil |
| Cooling | Individual Unit(S) | Individual Unit(S) |
| Wtr Source | Private Well | Private Well |
| Sewage | Septic | Septic |
| LD | 03/26/12 | 09/05/12 |
| DOM | 175 | 12 |
| CD | | |
| CL Date | | |
| LP | $ 326,900 | $ 269,900 |
| SP | | |
| LP/SqFt | $157.01 | $136.59 |

| | | |
|---|---|---|
| **SP/SqFt** | | |
| **LP/Asmt** | 1.31 | 1.24 |
| **SP/Asmt** | | |
| **SP/LP Ratio** | | |

*(C)   2012    MLS INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED*        09/26/12



**Prepared for Christopher and Cynthia Paduch**

| Comparable Address | # Beds | SqFt | Days on Market | List Price | Sale Price |
|---|---|---|---|---|---|
| 17 WOODMONT CIR | 3 | 2082 | | $289,000 | |
| 23 OLD KENTWOOD RD | 4 | 1986 | | $289,900 | |
| 25 HERITAGE BROOK DR | 3 | 2114 | | $299,900 | |
| 40 STOCKING LOT RD | 4 | 2238 | 85 | $299,999 | $290,000 |
| 7 DEER RUN | 3 | 2160 | | $325,900 | |
| 19 WOODMONT CIR | 3 | 2082 | | $326,900 | |
| 66 FALLS BASHAN RD | 3 | 1976 | | $269,900 | |

**Linda Tabone, Keller Williams Realty**
132 MONROE TURNPIKE, TRUMBULL, CT 06611
Office: 203-459-4663 | Cell: 203-915-6096 | Fax: 203-459-3433



**Prepared for Christopher and Cynthia Paduch**

| | 5 SCHULMAN VESLAK RD | | 17 WOODMONT CIR | | 23 OLD KENTWOOD RD | |
|---|---|---|---|---|---|---|
| Address: | 5 SCHULMAN VESLAK RD | | 17 WOODMONT CIR | | 23 OLD KENTWOOD RD | |
| Status: | | | ACT | | NEW | |
| List Price: | | | $289,000 | | $289,900 | |
| Sale Price: | | | | | | |
| Bedrooms: | 3 | | 3 | | 4 | |
| Square Ft: | | | 2,082 | | 1,986 | |
| LP/SqFt: | | | $138.81 | | $145.97 | |
| SP/SqFt: | | | | | | |
| Beds: | 3 | 3 | 3 | 3 | 3 | 4 |
| Baths: | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 |
| Garage(s): | | | | 2 | | 2 |
| Acres: | 1.11 | 1.11 | 1.11 | 1.04 | 1.11 | 1.85 |
| Heat Type: | WAIR | WAIR | WAIR | BASE | WAIR | BASE |
| SqFt: | | | | 2082 | | 1986 |
| Year Built: | | | | 2001 | | 1976 |
| Adjustment 1: | | | | | | |
| Adjustment 2: | | | | | | |
| Adjustment 3: | | | | | | |
| Adjustment 4: | | | | | | |
| Adjustment 5: | | | | | | |
| Adjustment 6: | | | | | | |
| Adjustment 7: | | | | | | |
| Adjustment 8: | | | | | | |
| Total: | $ 0 | | $ 0 | | $ 0 | |
| Adjusted $LP: | | | $ 289,000 | | $ 289,900 | |
| Adjusted $SP: | | | | | | |
| Comments: | | | | | | |

Information provided is reliable but not guaranteed.



**Prepared for Christopher and Cynthia Paduch**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Address:** | **25 HERITAGE BROOK DR** | | **40 STOCKING LOT RD** | | **7 DEER RUN** | |
| **Status:** | ACT | | CLOSE | | SHOW | |
| **List Price:** | $299,900 | | $299,999 | | $325,900 | |
| **Sale Price:** | | | $290,000 | | | |
| **Bedrooms:** | 3 | | 4 | | 3 | |
| **Square Ft:** | 2,114 | | 2,238 | | 2,160 | |
| **LP/SqFt:** | $141.86 | | $134.05 | | $150.88 | |
| **SP/SqFt:** | | | $129.58 | | | |
| | | | | | | |
| **Beds:** | 3 | 3 | 3 | 4 | 3 | 3 |
| **Baths:** | 2.1 | 2.5 | 2.1 | 2.5 | 2.1 | 2.1 |
| **Garage(s):** | | 2 | | 2 | | 3 |
| **Acres:** | 1.11 | 1.63 | 1.11 | 1.29 | 1.11 | 1.23 |
| **Heat Type:** | WAIR | WAIR | WAIR | WAIR | WAIR | WAIR |
| **SqFt:** | | 2114 | | 2238 | | 2160 |
| **Year Built:** | | 2001 | | 1989 | | 1976 |

**Adjustment 1:**
**Adjustment 2:**
**Adjustment 3:**
**Adjustment 4:**
**Adjustment 5:**
**Adjustment 6:**
**Adjustment 7:**
**Adjustment 8:**

| | | | |
|---|---|---|---|
| **Total:** | $ 0 | $ 0 | $ 0 |
| **Adjusted $LP:** | $ 299,900 | $ 299,999 | $ 325,900 |
| **Adjusted $SP:** | | $ 290,000 | |

**Comments:**

Information provided is reliable but not guaranteed.



**Prepared for Christopher and Cynthia Paduch**

| | | | | |
|---|---|---|---|---|
| **Address:** | **19 WOODMONT CIR** | | **66 FALLS BASHAN RD** | |
| **Status:** | ACT | | ACT | |
| **List Price:** | $326,900 | | $269,900 | |
| **Sale Price:** | | | | |
| **Bedrooms:** | 3 | | 3 | |
| **Square Ft:** | 2,082 | | 1,976 | |
| **LP/SqFt:** | $157.01 | | $136.59 | |
| **SP/SqFt:** | | | | |
| | | | | |
| **Beds:** | 3 | 3 | 3 | 3 |
| **Baths:** | 2.1 | 2.1 | 2.1 | 2.1 |
| **Garage(s):** | | 2 | | 2 |
| **Acres:** | 1.11 | 1.36 | 1.11 | 1.02 |
| **Heat Type:** | WAIR | BASE | WAIR | BASE |
| **SqFt:** | | 2082 | | 1976 |
| **Year Built:** | | 2001 | | 2001 |

| | |
|---|---|
| **Adjustment 1:** | |
| **Adjustment 2:** | |
| **Adjustment 3:** | |
| **Adjustment 4:** | |
| **Adjustment 5:** | |
| **Adjustment 6:** | |
| **Adjustment 7:** | |
| **Adjustment 8:** | |

| | | |
|---|---|---|
| **Total:** | $ 0 | $ 0 |
| **Adjusted $LP:** | $ 326,900 | $ 269,900 |
| **Adjusted $SP:** | | |

**Comments:**

Information provided is reliable but not guaranteed.



**Prepared for Christopher and Cynthia Paduch**

## General Facts About Pricing...

There are certain factors that are within our control and some factors beyond our control when it comes to setting the price. Those factors within our control are: the appearance of the property, how aggressively we market the property and the price. Factors outside our control are: location of property, size and local amenities. It's important to accept those factors that are beyond our control and focus on the pricing and preparation.

A property priced at market value will attract more buyers than a home priced above market value. Consider that a competitively priced property will also attract a greater number of potential buyers and increase your opportunity for a quick sale.

## Market Statistics...

| Sell Price Statistics | | Sell Price Per Sq. Ft. Statistics | |
|---|---|---|---|
| Average Price: | $290,000 | Average Price/Sq Ft: | $129.58 |
| High Price: | $290,000 | High Price/Sq Ft: | $129.58 |
| Median Price: | $290,000 | Median Price/Sq Ft: | $129.58 |
| Low Price: | $290,000 | Low Price/Sq Ft: | $129.58 |

Figures are based on selling price after adjustments, and rounded to the nearest $100.

## Summary...

Analysis of the selected comparable properties suggest similar properties are selling in the price range of: **$290,000 to $290,000**

## Recommended Price: $290,000

**Linda Tabone, Keller Williams Realty**
132 MONROE TURNPIKE, TRUMBULL, CT 06611
Office: 203-459-4663 | Cell: 203-915-6096 | Fax: 203-459-3433

Page 1 of 1



**Prepared for Christopher and Cynthia Paduch**

September 26, 2012

**Address:** 5 SCHULMAN VESLAK RD

**Estimated Sale Price:**     $290,000          **Buyer's Downpayment:**

**1st Mortgage Balance:**

**2nd Mortgage Balance:**                        **Buyer's Total Mortgage:**

**Total Seller's Mortgage:**

**Seller's Expenses**        Figures are estimates only, not a guarantee, and are subject to change.

|  |  |
|---|---|
| **Total Estimated Seller Expenses:** | **$0** |
| **Estimated Sale Price:** | **$290,000** |
| **Less Estimated Seller Expenses:** | **$0** |
| **Less Sellers Mortgage:** |  |
| **Estimated Net Proceeds:** | **$290,000** |

Seller:                Date:            Seller:                Date:

Agent:                Date:



**Prepared for Christopher and Cynthia Paduch**

**Exterior**
The condition of your home's exterior is most important when it comes to buyer appeal.

- House number should be easy to read
- Lights on timers to ensure house is lit up after sunset
- Eaves troughs, and down spouts in good repair
- Garage/car port clean and tidy
- Litter picked up
- Cracked or broken window panes replaced
- Doorbell and door hardware in good repair
- Touch up trim paint on doors, window frames, fascia, etc.
- Mow, edge and weed the lawn frequently until th e home is sold.
- Overgrown shrubbery should be cut back to show as much of the exterior as possible.
- A low-cost investment in seasonal flowers or ground cover will add a personal touch.
- Inspect the roof for necessary repairs and any visible broken shingles or tiles.
- Stucco water stains can be repaired using a mild bleaching agent.
- Fences should be mended and painted.
- Wash all windows inside and outside.


**Interior**
Warm and welcoming!

- Lights should be on and drapes should be left open during daylight
- Heat set at a comfortable temperature
- Fresh flowers/plants in various rooms
- Chipped plaster and paint touched up and repaired
- Doors and cupboards properly closed
- Leaky taps and toilets repaired
- Burned out light bulbs replaced
- Squeaky doors oiled
- Mirrors, fixtures, and taps cleaned and polished
- Seals around tubs and basins in good repair
- Floors cleaned, garbage containers emptied
- Inside of closets and cupboards neat and tidy
- Valuable property, out of reach, out of sight, or locked away
- Pets absent, where possible, or contained during showings
- All torn screens should be repaired or replaced.
- Avoid repainting the entire house unless current colors are very loud or offbeat.
- White or light pastels are the easiest to work with and they make your rooms look larger.
- Fireplace lit in cooler weather
- Air conditioner turned on in warm weather
- Countertops neat and polished
- Appliances cleaned

EXHIBIT B

1370

After Recording Return To:
WILLIAM R. BOWLES
416 KILLINGSWORTH ROAD, 2ND FLOOR
HIGGANUM          , CT 06441

VOL. 694 PAGE 110

——————————————— [Space Above This Line For Recording Data] ———————————————

# OPEN-END MORTGAGE DEED

MIN: 100029500007887193

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 15, 2006                        , together with all Riders to this document.

(B) "Borrower" is CHRISTOPHER S. PADUCH and CYNTHIA S. PADUCH

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is Taylor, Bean & Whitaker Mortgage Corp.
Lender is a                                                        organized and existing under
the laws of FL                                                        . Lender's address is
1417 North Magnolia Ave, Ocala, FL  34475

(E) "Note" means the promissory note signed by Borrower and dated April 15, 2006                        . The Note states that Borrower owes Lender Two Hundred Fifty Six Thousand and no/100
Dollars (U.S. $256,000.00                        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 01, 2036

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

CONNECTICUT—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                        Form 3007 1/01
ITEM T9620L1 (0011)—499990                                (Page 1 of 12 pages)                        GREATLAND ■
                                                                        To Order Call: 1-800-530-9393□Fax: 616-791-1131

VOL. 694 PAGE 111

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider

☐ Balloon Rider ☐ Planned Unit Development Rider ☐ Other(s) [specify]

☐ 1-4 Family Rider ☐ Biweekly Payment Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**VOL. 694 PAGE 112**

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the _____ County _____ of _____ Middlesex _____
(Type of Recording Jurisdiction)    (Name of Recording Jurisdiction)

**See Attached Exhibit A.**

which currently has the address of _____ 8 SCHULMAN VEBELAK RD _____
(Street)

**EAST HADDAM** , Connecticut **06423** ("Property Address"):
(City)        (Zip Code)

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

CONNECTICUT—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3007 1/01
ITEM T9632L3 (0011)—658395        (Page 3 of 12 pages)    GREATLAND ■
To Order Call 1 800 530 9393 □Fax 616 791 1131

VOL. 694 PAGE 113

## SCHEDULE A

All that certain piece or parcel of land, together with the buildings and improvements thereon, situated in the Town of East Haddam, County of Middlesex and State of Connecticut, being known as 5 Schulman-Veselak Road and being shown as Lot 14 on a map entitled "HERITAGE BROOK SUBDIVISION SCHULMAN VESELAK ROAD EAST HADDAM, CONNECTICUT SITE PLAN SCALE 1" = 40FT. DATE: JUNE 1, 1995 SHEET 3 OF 8 ROGER NEMERGUT P. E. CONSULTING ENGINEER PARKER HILL ROAD, KILLINGWORTH, CONNECTICUT" revised through 11/27/95 on file in the Office of the East Haddam Town Clerk to which reference may be had for a more particular description.

Together with a fifteen foot easement for grading as more fully set forth in a Warranty Deed from Scott W. Jezek and Henry M. Aldrich to James M. Curtin dated May 15, 1996 and recorded in Volume 396 at Page 94 of the East Haddam Land Records.

Said premises are also shown as Lot 14 on a map entitled "Open Space Subdivision Heritage Brook Subdivision Schulman-Veselak Road  East Haddam Connecticut Record Subdivision Map June 1, 1995 Scale: 1" = 100 ft. Sheet 1 of 8 Revised through January 22, 1996 " on file in the Office of the East Haddam Town Clerk as Map No. 2888 to which reference may be had for a more particular description.

## VOL. 694 PAGE 114

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in

CONNECTICUT—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                        Form 3007 1/01
(TEM 17201L4 (0011)—MERS                                      (Page 4 of 32 pages)                      To Order Call: 1 800 530-9393 Fax: 616 791 1131

VOL. 604 PAGE 115

writing or Applicable Law requires interest to be paid on the Funds. Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if

CONNECTICUT—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3007 1/01

(Page 5 of 12 pages)

VOL. 694 PAGE 116

the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.

CONNECTICUT—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3007 1/01
ITEM T2632L6 (0011)—MERS                                    (Page 6 of 12 pages)                  To Order Call 1-800-530-9363 □Fax 646-791-1131

# VOL. 694 PAGE 117

It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11.  Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the

CONNECTICUT—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            Form 3007 1/01

(Page 7 of 13 pages)

# VOL. 694 PAGE 118

restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

CONNECTICUT—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3007 1/01

(Page 8 of 12 pages)

# VOL. 694 PAGE 119

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security

CONNECTICUT—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3009 1/01

(Page 9 of 12 pages)

VOL 694 PAGE 120

Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

VOL. **694** PAGE **121**

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.   **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23.   **Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.   **Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

25.   **Future Advances.** Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.

CONNECTICUT—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T0063L11 (0011)—03093

(Page 11 of 12 pages)

Form 3007 1/01

GREATLAND ■

To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

## VOL. 694 PAGE 122

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)     _____ (Seal)
CHRISTOPHER S. PADUCH  -Borrower    CYNTHIA S. PADUCH  -Borrower

_____ (Seal)     _____ (Seal)
-Borrower    -Borrower

_____ (Seal)     _____ (Seal)
-Borrower    -Borrower

Signed, sealed and delivered in the presence of:

WILLIAM R. BOWLES      GEORGIA A. PELLEGRINI

State of Connecticut
County of **Middlesex**    ss. **Higganum**

The foregoing instrument was acknowledged before me this 15th day of April 2005 (date) by

CHRISTOPHER S. PADUCH AND CYNTHIA S. PADUCH (person(s) acknowledging).

WILLIAM R. BOWLES
COMMISSIONER OF THE SUPERIOR COURT
My commission expires:

Received for Filing at East Haddam, Ct.
April 18 20 05 at 1:21 P. M.
Town Clerk

CONNECTICUT—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3007 1/01
(Page 12 of 12 pages)

EXHIBIT C

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

INST# 00001361

VOL: 893 PG: 143

## CORPORATE ASSIGNMENT OF MORTGAGE

East Haddam Town, Connecticut
SELLER'S SERVICING #:0257659888 "PADUCH"

MERS #: 1000295000007587193 SIS #: 1-888-679-6377

Date of Assignment: August 10th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR TAYLOR, BEAN &
WHITAKER MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E
VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: CHRISTOPHER S. PADUCH AND CYNTHIA S. PADUCH, To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP., ITS
SUCCESSORS AND ASSIGNS
Date of Mortgage: 04/15/2005 Recorded: 04/18/2005 In Book/Reel/Liber: 694 Page/Folio: 110 In East Haddam
Town, State of Connecticut.

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having
an original principal sum of $256,000.00 with interest, secured thereby, with all moneys now owing or that may
hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and
provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's
beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR TAYLOR, BEAN & WHITAKER
MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS
On ___8/11/11___

By: _____
    **Kathleen Everson**    , Assistant
Secretary

Received for Filing at East Haddam, CT
Aug 16, 2011 02:17P
Debra H. Denette
Town Clerk
VOL: 893 PAGE: 143

WITNESS

WITNESS

STATE OF Minnesota
COUNTY OF Dakota

On ___8/11/11___, before me, ___Julie Ann Prieto___, a Notary Public in and for Dakota in the
State of Minnesota, personally appeared **Kathleen Everson**, Assistant Secretary, personally known to
me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Notary Expires: 1/31/2014

JULIE ANN PRIETO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014

(This area for notarial seal)

*PV*PVWFEM*08/10/2011 10 26 22 PM* WFEM01WFEMAC000000000000000131532* CT_EHAD* 0257659888 CTSTATE_MORT_ASSIGN_ASSN *PVWFEM*

EXHIBIT D

...your oldest credit account open, as a high average account age
...stability to lenders. Also, especially if you have been managing credit for a
...opening many new accounts will lower your average account age and may have a
negative impact.

| | |
|---|---|
| **Length of Credit History** | 23 Years, 3 Months |
| **Average Account Age** | 7 Years, 9 Months |
| **Oldest Account** | SEARS/CBNA  (Opened 06/01/1989) |
| **Most Recent Account** | MIDLAND FUNDING LLC  (Opened 10/14/2011) |

## Inquiries - Requests for your Credit History

Numerous inquires on your credit file for new credit may cause you to appear risky to lenders, so it is
usually better to only seek new credit when you need it. Typically, lenders distinguish between
inquiries for a single loan and many new loans in part by the length of time over which the inquiries
occur. So, when rate shopping for a loan it's a good idea to do it within a focused period of time.

| | |
|---|---|
| **Inquiries in the Last 2 Years** | 1 |
| **Most Recent Inquiry** | AT&T  (06/09/11) |

## Potentially Negative Information

Late payments, collections and public records can have a negative impact on your credit standing.
The more severe and recent they are, the more negative the potential impact might be.

| | |
|---|---|
| **Public Records** | 2 |
| **Negative Accounts** | 22 |
| **Collections** | 1 |

## Mortgage Accounts

Mortgage accounts include first mortgages, home equity loans, and any other loans secured by real
estate you own.

### Open Accounts

| Account Name | Account Number | Date Opened | Balance | Date Reported | Past Due | Status | Credit Limit |
|---|---|---|---|---|---|---|---|
| WELLS FARGO HOME MOR | 708025765XXXX | 04/15/2005 | $284,195 | 09/07/2012 | | PAYS AS AGREED | |

**WELLS FARGO HOME MORTGAGE**

PO Box 10335
Des Moines, IA-503060335
(800) 288-3212

*Mortgage*

| | | | |
|---|---|---|---|
| Account Number: | 708025765XXXX | Status: | PAYS AS AGREED |
| Account Owner: | Joint Account | High Credit: | $256,000 |
| Type of Account: | Mortgage | Credit Limit: | |
| Term Duration: | 38 Years | Terms Frequency: | Monthly (due every month) |
| Date Opened: | 04/15/2005 | Balance: | $284,195 |
| Date Reported: | 09/07/2012 | Amount Past Due: | |

EXHIBIT E

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Christopher S. Paduch** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF CONNECTICUT | | |
| Case number | **12-32101** | | |

■ Check if this is an amended filing

Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**  Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes.  Where is the property?

| | | |
|---|---|---|
| **1.1** | **5 Schulman Veselak Road** | **What is the property?** Check all that apply |
| | Street address, if available, or other description | ☐ Single-family home |
| | | ☐ Duplex or multi-unit building |
| | | ☐ Condominium or cooperative |
| | | ☐ Manufactured or mobile home |
| | **East Haddam    CT    06423-0000** | ☐ Land |
| | City      State      ZIP Code | ☐ Investment property |
| | | ☐ Timeshare |
| | | ☐ Other |
| | **Middlesex** | **Who has an interest in the property?** Check one |
| | County | ■ Debtor 1 only |
| | | ☐ Debtor 2 only |
| | | ☐ Debtor 1 and Debtor 2 only |
| | | ☐ At least one of the debtors and another |

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$290,000.00** | **$290,000.00** |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

**Fee simple**

☐ **Check if this is community property**
(see instructions)

Other information you wish to add about this item, such as local property identification number:

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here................................................................=>

| |
|---|
| **$290,000.00** |

**Part 2:**  Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3.  **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

■ No

☐ Yes

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor 1 | Christopher S. Paduch | Case number *(if known)* | **12-32101** |

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5   Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for
    pages you have attached for Part 2. Write that number here...........................................................=>    | **$0.00** |

**Part 3:    Describe Your Personal and  Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes.  Describe.....

| Regular furniture, living room, family room, 3 bedrooms wit furniture, desk and chair, dining room table six chairs,  and kitchen appliances and kitchen essentials and utensils | $4,500.00 |

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
■ Yes.  Describe.....

| 1 DVD player, 2 televisions, desktop computer, printer, old camcorder, DVDs, CDs, and the like | $1,100.00 |

**8. Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
■ No
☐ Yes.  Describe.....

**9. Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
☐ No
■ Yes.  Describe.....

| Baseball bat, baseball glove, a kayak, and tennis racket | $600.00 |

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
■ No
☐ Yes.  Describe.....

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
■ Yes.  Describe.....

| Regular cloting 6 suits, and casual clothing | $450.00 |

| Debtor 1 | Christopher S. Paduch | Case number *(if known)* | 12-32101 |

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
☐ No
■ Yes.  Describe.....

| Watch | $100.00 |

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses
☐ No
■ Yes.  Describe.....

| 2 dogs and a cat | $30.00 |

**14. Any other personal and household items you did not already list, including any health aids you did not list**
■ No
☐ Yes.  Give specific information.....

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ............................................................................

| $6,780.00 |

**Part 4:    Describe Your Financial Assets**

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☐ No
■ Yes........................................................................................

| | Cash | $300.00 |

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
■ Yes......................

Institution name:

| 17.1. | **Checking** | People's United Bank | $29.64 |

| 17.2. | **Savings** | People's United Bank | $0.57 |

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
■ No
☐ Yes..................

Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
■ No
☐ Yes.  Give specific information about them...................

Name of entity:                                      % of ownership:

Debtor 1    <u>Christopher S. Paduch</u>                                    Case number *(if known)*   <u>12-32101</u>

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
    ■ No
    ☐ Yes. Give specific information about them
                                        Issuer name:

21. **Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
    ■ No
    ☐ Yes. List each account separately.
                            Type of account:            Institution name:

22. **Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
    ■ No
    ☐ Yes. ....................                    Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
    ■ No
    ☐ Yes............        Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
    ■ No
    ☐ Yes............        Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
    ■ No
    ☐ Yes.  Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
    ■ No
    ☐ Yes.  Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
    ■ No
    ☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**
    ■ No
    ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
    ■ No
    ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
                benefits; unpaid loans you made to someone else
    ■ No
    ☐ Yes.  Give specific information..

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor 1 | Christopher S. Paduch | Case number *(if known)* | 12-32101 |

**31. Interests in insurance policies**
  *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
  ■ No
  ☐ Yes. Name the insurance company of each policy and list its value.

  Company name:                    Beneficiary:                    Surrender or refund
                                                                   value:

**32. Any interest in property that is due you from someone who has died**
  If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
  ■ No
  ☐ Yes.  Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
  *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
  ■ No
  ☐ Yes. Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
  ☐ No
  ■ Yes.  Describe each claim.........

|  |  |
|---|---|
| Possible preference - monies taken from Debtor's bank accounts at People's United Bank totaling $1,145.00 in connection with Judgment by FIA Card Services N.A. | $1,145.00 |

**35. Any financial assets you did not already list**
  ■ No
  ☐ Yes.  Give specific information..

**36.  Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**................................................................................................. 

$1,475.21

**Part 5:    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**37.  Do you own or have any legal or equitable interest in any business-related property?**
  ■ No. Go to Part 6.
  ☐ Yes.  Go to line 38.

**Part 6:    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
  If you own or have an interest in farmland, list it in Part 1.

**46.  Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
  ■ No. Go to Part 7.
  ☐ Yes.  Go to line 47.

**Part 7:    Describe All Property You Own or Have an Interest in That You Did Not List Above**

**53.  Do you have other property of any kind you did not already list?**
  *Examples:* Season tickets, country club membership
  ■ No
  ☐ Yes. Give specific information.........

**54.  Add the dollar value of all of your entries from Part 7. Write that number here** ....................................

$0.00

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

Debtor 1   **Christopher S. Paduch**                                    Case number *(if known)*   **12-32101**

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

| | | | |
|---|---|---|---|
| 55. | **Part 1: Total real estate, line 2** ................................................................................................................. | | **$290,000.00** |
| 56. | **Part 2: Total vehicles, line 5** | **$0.00** | |
| 57. | **Part 3: Total personal and household items, line 15** | **$6,780.00** | |
| 58. | **Part 4: Total financial assets, line 36** | **$1,475.21** | |
| 59. | **Part 5: Total business-related property, line 45** | **$0.00** | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | **$0.00** | |
| 61. | **Part 7: Total other property not listed, line 54**              + | **$0.00** | |
| 62. | **Total personal property.** Add lines 56 through 61... | **$8,255.21** | Copy personal property total  **$8,255.21** |
| 63. | **Total of all property on Schedule A/B**. Add line 55 + line 62 | | **$298,255.21** |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Christopher S. Paduch** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF CONNECTICUT |
| Case number (if known) | **12-32101** |

■ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

4/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

### Part 1:    Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own  Copy the value from *Schedule A/B* | Amount of the exemption you claim  *Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **5 Schulman Veselak Road East Haddam, CT 06423  Middlesex County**  Line from *Schedule A/B*: **1.1** | $290,000.00 | ■ $20,669.79  ☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(1)** |
| **Regular furniture, living room, family room, 3 bedrooms wit furniture, desk and chair, dining room table six chairs,  and kitchen appliances and kitchen essentials and utensils**  Line from *Schedule A/B*: **6.1** | $4,500.00 | ■ $4,500.00  ☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **1 DVD player, 2 televisions, desktop computer, printer, old camcorder, DVDs, CDs, and the like**  Line from *Schedule A/B*: **7.1** | $1,100.00 | ■ $1,100.00  ☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **Baseball bat, baseball glove, a kayak, and tennis racket**  Line from *Schedule A/B*: **9.1** | $600.00 | ■ $600.00  ☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **Regular cloting 6 suits, and casual clothing**  Line from *Schedule A/B*: **11.1** | $450.00 | ■ $450.00  ☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |

| Debtor 1 | **Christopher S. Paduch** | | Case number (if known) | **12-32101** |

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Watch**<br>Line from *Schedule A/B*: **12.1** | $100.00 | ■  $100.00<br>☐  100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(4)** |
| **2 dogs and a cat**<br>Line from *Schedule A/B*: **13.1** | $30.00 | ■  $30.00<br>☐  100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **Cash**<br>Line from *Schedule A/B*: **16.1** | $300.00 | ■  $300.00<br>☐  100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **Checking: People's United Bank**<br>Line from *Schedule A/B*: **17.1** | $29.64 | ■  $29.64<br>☐  100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **Savings: People's United Bank**<br>Line from *Schedule A/B*: **17.2** | $0.57 | ■  $0.57<br>☐  100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **Possible preference - monies taken from Debtor's bank accounts at People's United Bank totaling $1,145.00 in connection with Judgment by FIA Card Services N.A.**<br>Line from *Schedule A/B*: **34.1** | $1,145.00 | ■  $1,145.00<br>☐  100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |

3. **Are you claiming a homestead exemption of more than $189,050?**
(Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

■  No

☐  Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

    ☐  No

    ☐  Yes

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Christopher S. Paduch** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF CONNECTICUT |
| Case number | **12-32101** |
| (if known) | |

■ Check if this is an
amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules                    12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes.  Name of person _____  Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

| X | **/s/ Jill Peterson Administratrix of the Probate Estate of Christopher S. Paduch, Debtor** | X | |
|---|---|---|---|
| | **Christopher S. Paduch** | | Signature of Debtor 2 |
| | Signature of Debtor 1 | | |
| | Date  **April 25, 2022** | | Date |

EXHIBIT F

Howard Lee Schiff, P.C.
PO Box 280245,
East Hartford CT
06128-0245

INST# 00000737

VOL: 861 PG: 64

## JUDGMENT LIEN

THIS IS TO CERTIFY that DISCOVER BANK
known as the Plaintiff, with a principal place of business
in NEW ALBANY OH
on 4/13/10 in the Superior Court holden at
MIDDLETOWN , State of Connecticut
did obtain a judgment in its favor against
CYNTHIA PADUCH ,
known as the Defendant(s), of the Town of EAST HADDAM , State
of Connecticut, for the sum of $14,793.52 damages and
$360.80 cost of suit.  Said judgment remains unsatisfied;
the current balance due is $14,793.52 plus costs and
judgment interest. To secure the judgment balance, and;
the lawful interest thereon, a Judgment Lien in favor of
said Plaintiff is hereby placed on the following described
real estate of the said Defendant(s) to wit:


A certain piece or parcel of land situated in the Town
of EAST HADDAM , State of Connecticut,
known as 5 SCHULMAN VESLAK ROAD .


Dated at East Hartford Connecticut, on May 3, 2010 .

By: _____
STEPHEN A. WIENER, ESQ
LAW OFFICES HOWARD LEE SCHIFF, P.C.
510 Tolland Street POB 280245
CN-T40935                    E Hartford, CT  06128-0245


THIS COMMUNICATION IS FROM A DEBT COLLECTOR

Received for Filing at East Haddam, CT
May 17, 2010 11:06A
cc:  CYNTHIA PADUCH                 Debra H. Denette
     5 SCHULMAN VESLAK ROAD         Town Clerk
     EAST HADDAM CT 06423           VOL: 861 PAGE:  64

EXHIBIT G

Solomon and Solomon, P.C.                    Solomon File    23399062
5 Columbia Circle   P.O. Box 15019
Albany, NY 12212-5019

Docket Number: cv-11-6004616S
****************************************
CITIBANK (SOUTH DAKOTA) N.A.          *    SUPERIOR       COURT
                                      *    MIDDLESEX JUDICIAL
                          Plaintiff   *    DISTRICT
     v.                               *    06/03/11
                                      *
CHRISTOPHER S PADUCH                  *
                          Defendant   *
****************************************

                    CERTIFICATE OF JUDGMENT LIEN


        JUDGMENT DEBTOR'S NAME              JUDGMENT CREDITOR'S NAME
        CHRISTOPHER S PADUCH                CITIBANK (SOUTH DAKOTA) N.A.


        It is hereby certified that the above named Judgment Creditor
with an address at c/o Solomon and Solomon, P.C. Attorneys, 5 Columbia
Circle, P.O. Box 15019, Albany, NY 12212-5019 obtained a Judgment in its
favor on  05/11/11   in the Superior Court at Middlesex
in an action bearing the docket number  cv-11-6004616S    against the
Judgment Debtor with an address at:
        5 SCHULMAN VESLAK RD
        EAST HADDAM        CT   06423

The original amount of the Judgment Creditor's Judgment is for    $14455.37
which Judgment remains unsatisfied.

        To secure payment of said Judgment and the lawful post-judgment
interest and costs theron, a Judgment Lien in favor of said Judgment
Creditor is hereby placed upon the real property of said Judgment Debtor
situated in EAST HADDAM        County of MIddlesex                ,
commonly known as:  5 SCHULMAN VESLAK RD
                    EAST HADDAM        CT           06423
being the same premises conveyed to said Judgment Debtor by instrument
recorded in the EAST HADDAM        Land Records to which reference may be had.


Dated Albany, New York this  7/25/11          PLAINTIFF/JUDGMENT CREDITOR
                                              CITIBANK (SOUTH DAKOTA) N.A.


This is an attempt to collect               Julie B. Solomon, its Attorney
a debt.  Any information obtained            Solomon and Solomon P.C.
will be used for that purpose.               PO Box 15019
This communication is from a debt            Albany, NY 12212-5019
collector.                                   Telephone:(518) 456-7200
                                             Firm Juris No. 421261
   cc: CHRISTOPHER S PADUCH                    Received for Filing at East Haddam, CT
       5 SCHULMAN VESLAK RD                     Jul 28, 2011 10:29A
       EAST HADDAM        CT      06423        Debra H. Denette
                                               Town Clerk
                                               VOL: 892 PAGE: 134

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| In The Matter of | ) CASE NO.: 12-32101 |
| | ) |
| CHRISTOPHER S. PADUCH, | ) CHAPTER 7 |
| | ) |
| Debtor | ) |
| _____ | |
| | |
| CHRISTOPHER S. PADUCH AND | ) |
| JILL PETERSON, ADMINISTRATRIX | |
| OF THE ESTATE OF CHRISTOPHER S. | ) |
| PADUCH, DEBTOR | |
| | |
| Movants | ) |
| | |
| vs. | ) |
| | |
| DISCOVER BANK, | ) |
| CITIBANK (SOUTH DAKOTA), N.A., | |
| KARA S. RESCIA, TRUSTEE, AND | ) |
| U.S. TRUSTEE | |
| | |
| Respondents | ) |

<u>ORDER GRANTING MOTION TO AVOID LIENS PURSUANT TO 11 U.S.C. § 522(f)</u>

In connection with the Debtor's Motion to Avoid Liens pursuant to 11 U.S.C. §522(f) (the "Motion", ECF No. 20), after notice and a hearing, *see* 11 U.S.C. § 102(1), and in compliance with the Court's Contested Matter Procedure, and there being no objection filed to the Motion, it having been represented in the Motion that:

1.   On the date of the commencement of this case, September 12, 2012, the fair market value of the Debtor's residence and real property located at 5 Schulman Veselak Road, East Haddam, CT (the "Property"), was $290,000.00;

2.   The Debtor is entitled to and "could claim", *see* 11 U.S.C. § 522(f)(1) and (2)(A), an exemption with respect to the Property under 11 U.S.C. §§ 522(b) or Connecticut General Statute 52-352b(t) in the amount of $1.00; and

3.   All encumbrances filed against the Property are set forth in the Motion; it is hereby

ORDERED:  The Motion is granted insofar as the fixing of the following liens on

13

the Debtor's interest in the Property is avoided pursuant to 11 U.S.C. § 522(f):

    A.  First encumbrance
        i.   Discover Bank
        ii.  Judgment Lien
        iii. Recording information:
               a.  Volume: 861
               b.  Page: 64
               c.  City/Town: East Haddam
        iv. Amount of encumbrance: $14,793.52

    B.  Second encumbrance
        i.   Citibank (South Dakota), N.A.
        ii.  Judgment Lien
        iii. Recording information:
               a.  Volume: 892
               b.  Page: 134
               c.  City/Town: East Haddam
        iv. Amount of encumbrance: $14,455.37;

and it is further

ORDERED: If the Debtor's case is dismissed, any and all liens avoided by this Order shall be reinstated under 11 U.S.C. § 349 without further order of this Court.

*For the purposes of this order, "Debtor" means "Debtors" where applicable.

14

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In The Matter of | ) | CASE NO.: 12-32101 |
| CHRISTOPHER S. PADUCH, | ) | CHAPTER 7 |
| Debtor | ) | |
| _____ | | |
| CHRISTOPHER S. PADUCH AND | ) | |
| JILL PETERSON, ADMINISTRATRIX | | |
| OF THE ESTATE OF CHRISTOPHER S. | ) | |
| PADUCH, DEBTOR | | |
| Movants | ) | |
| vs. | ) | |
| DISCOVER BANK, | ) | APRIL 27, 2022 |
| CITIBANK (SOUTH DAKOTA), N.A., | | |
| KARA S. RESCIA, TRUSTEE, AND | ) | |
| U.S. TRUSTEE | | |
| Respondents | ) | |

NOTICE OF CONTESTED MATTTER RESPONSE DATE

Gerardo Retamar, (the "Movant") has filed a Motion to Avoid Judicial Lien, (the

"Contested Matter") with the United States Bankruptcy Court for the District of

Connecticut.  Notice is hereby given that any response to the Contested Matter must be

filed with the Court no later than May 18, 2022*.  In the absence of a timely filed

response, the proposed order in the Contested Matter may enter without further notice

15

and hearing, see 11 U.S.C. § 102(1).

Date:   April 27, 2022                         BY:  /s/Charles A. Eggert, Jr.
                                                    Charles A. Eggert, Jr., Esq;
                                                    Charles A. Eggert, Jr., Esq., LLC
                                                    Nine Trumbull Street
                                                    New Haven, CT 06511
                                                    Tel. No.: (203)772-1044
                                                    Fax:      (203)865-0869
                                                    Email: caelaw@optonline.net
                                                    Fed. Bar No.: ct00754


*Pursuant to Federal Rules of Bankruptcy Procedure 9006(f), if service is made by mail, three days are added after the response date set in this notice.